## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**JAMES R. USERY,** *et al.*                                                      **PLAINTIFFS**

**vs.**                                        **4:07CV01185-WRW**

**ANADARKO PETROLEUM CORPORATION,** *et al.*                        **DEFENDANTS**

## <u>ORDER</u>

Pending is Plaintiffs' Motion to Remand (Doc. No. 7). Defendants have responded (Doc. No 12), and Plaintiffs have replied (Doc. No. 14).  For the reasons set out below, Plaintiffs' Motion to Remand is DENIED.

### I. Background

This case involves oil and mineral rights in which both Plaintiffs and Defendants claim an interest.[1]  Around 1933, the Missouri Pacific Railroad Company issued to Plaintiffs' predecessor in interest a deed that reserved for itself "all the minerals upon, in, or under" certain real property located in White County, Arkansas.[2]  Defendant Anadarko Petroleum Corporation ("Anadarko") became the successor in interest of these mineral rights and later entered into an oil and gas lease with Defendant Hallwood Energy, L.P. ("Hallwood"). The lease granted Hallwood the exclusive rights to explore and extract any oil and natural gas in or under the property.[3]  Later, Plaintiffs became the owners of the property by conveyance of a warranty deed and filed a petition to quiet title in the White County Circuit Court.[4]  Defendants removed the

---

[1]Doc. No. 2.

[2]*Id.*

[3]*Id.*

[4]*Id.*

case,[5] and Plaintiffs filed a motion to remand.[6]

Plaintiffs assert this Court is without jurisdiction because the amount in controversy is less than the minimum required in diversity jurisdiction cases.[7]  Defendants assert that the circumstances of the case allow them to determine the amount in controversy, which they claim is in excess of $75,000.[8]

## II. Discussion

A district court's jurisdiction extends to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states."[9]  The determination of the value of the matter in controversy is a federal question to be decided under federal standards.[10] There is no dispute that the parties to are diverse. Plaintiffs claim the value of the property interests at stake is below $75,000; Defendants claim that the value is substantially greater.  The issue is whether to apply Plaintiffs' or Defendants' valuation in finding if the amount in controversy meets the statutory minimum.

The rules for determining whether the amount in controversy requirement has been satisfied are well settled.  The party seeking to invoke federal jurisdiction has the burden of

---

[5]Doc. No. 1.

[6]Doc. No. 7.

[7]Doc. No. 8.

[8]Doc. No. 13.

[9]28 U.S.C. § 1332(a).

[10]*Hedberg v. State Farm Mutual Automobile Ins. Co.*, 350 F.2d 924, 928 (8th Cir. 1965).

proving the existence of jurisdiction.[11]  Where a plaintiff's complaint does not request more than the jurisdictional minimum on its face, the defendant has the burden to produce evidence establishing beyond a preponderance that the claim exceeds the jurisdictional minimum.[12] Thus, Defendants, as the removing party, must show by a preponderance that the value of the oil and mineral rights is more than $75,000.

Generally, the amount in controversy is determined by the plaintiff; the plaintiff may bar removal by asking for a specific amount less than that required for federal jurisdiction.[13]  When a plaintiff seeks money damages, the "plaintiffs gain is usually the defendant's loss and it makes no difference whether the jurisdictional amount is measured from the viewpoint of the plaintiff or the defendant."[14]  However, when an injunction or declaratory judgement is sought and the parties have assigned unequal values to the controversy, the Eighth Circuit recognized the possibility to determine the amount in controversy by considering the pecuniary effect of a judgment against either party.[15]

In *Hatridge v. Aetna Cas. & Surety Co.*, the plaintiff asserted a consortium loss that was slightly below the amount in controversy requirement and claimed that federal diversity jurisdiction was lacking.[16]  Although it acknowledged that valuing the controversy from the

---

[11]*Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 814 (8th Cir.1969); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936).

[12]*De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411-12 (5th Cir. 1995); *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

[13]*Hedberg*, 350 F.2d at 928.

[14]*Inman v. Milwhite Co.*, 261 F. Supp.703, 707 (E.D. Ark. 1966).

[15]See *Hatridge v. Aetna Cas. & Surety Co.*, 415 F.2d 809 (8th Cir. 1969).

[16]*Id*. at 812.

3

plaintiff's viewpoint was the general rule, the Eighth Circuit recognized situations in which it would be appropriate to measure the amount in controversy according to the "pecuniary result" either party would face as a consequence of the judgement.[17]  This approach is "particularly appropriate where the values to the parties are not the same and where the defendant has removed the action."[18]  The court ultimately did not rely on this pecuniary risk principle in its decision, but it approved of measuring the amount of controversy based on a party's pecuniary risk.[19]  The pecuniary risk principle has been used to measure the amount of controversy for jurisdictional purposes in other cases, as well.[20]

The pecuniary risk principle discussed in *Hatridge* was partially rooted in the holding of *Inman v. Milwhite Co., Inc.*[21]  In *Inman*,[22] the court concluded it was more appropriate to measure the controversy from the standpoint of the party invoking federal jurisdiction rather than measuring the controversy solely from the plaintiff's or defendant's viewpoint.[23]  In that case, both parties disputed the value of a lease giving the defendant mining rights to a soapstone quarry.[24]

---

[17]*Id*. at 815.

[18]*Id*.

[19]*Id*. at 815-816.

[20]*Dadkt, Inc. v. All Green Acquisition Corp.,* No. 1:06-CV-076, 2007 U.S. Dist. Lexis 47085 (D. N.D. June 28, 2007) (holding that the value of the claim should be determined by looking at the pecuniary effect that an adverse declaration will have on either party); *NCMIC Ins. Co v. Sammon*, No. 05-456 (RHK/JSM), 2005 U.S. Dist. Lexis 24208 (D. Minn. Oct. 17, 2005) (concluding that an insurance policy with a $1,000,000 payoff was the pecuniary risk the plaintiff faced from an adverse judgment).

[21]*Hatridge*, 415 F.2d at 815.

[22]261 F. Supp. 703 (E.D. Ark. 1966).

[23]*Inman*, 261 F. Supp at 708.

[24]*Id*. at 704.

The plaintiff sought a declaratory judgment to cancel the lease and eject the defendants.[25]  Noting the uncertainty in the law when the "gain to the plaintiff and the loss to the defendant do not correspond," the court concluded that the plaintiff's viewpoint rule should not be applied automatically or exclusively in cases where the difference in alleged amount in controversy is significant.[26]  The court reasoned:

> [W]hen what a plaintiff stands to gain and what a defendant stands to lose are unequal, and where federal jurisdiction is invoked by the party standing to gain or lose more than his adversary, the greater gain or the greater loss should be applied as the criterion of jurisdictional amount.[27]

The court based its holding in part on the rationale that the "party invoking federal jurisdiction method" best effectuated the purpose of the jurisdictional amount -- "to keep trivial cases away from the court."[28]

It is reasonable in this case to measure the amount in controversy according to the Defendants' pecuniary risks -- relying solely on Plaintiffs' assessment of the amount in controversy would be inequitable because of the significantly unequal value each party gives the property interests at stake. Defendants offer affidavits as evidence of their losses if they are unsuccessful in this suit.[29]  The affidavit from Defendant Hallwood estimates losses of $400,000 in anticipated future revenue; the affidavit from Defendant Anadarko asserts losses in property valued in excess of $75,000.[30]  Measuring the amount of controversy according to Defendants'

---

[25]*Id.*

[26]*Id.* at 706, 708.

[27]*Id.* at 708.

[28]*Id.* at 707.

[29]Doc. No. 12, ¶ ¶ 3 and 4

[30]Doc. No. 13., p.3.

pecuniary risk is appropriate because the potential losses that Defendants may face exceeds the $75,000 minimum. Defendants' aforementioned affidavits establish beyond a preponderance that the value of the oil and mineral rights is worthy of federal jurisdiction.

Lastly, Plaintiffs argue that Arkansas law grants land owners the right to testify to the value of their land.[31]  While this is correct, that authority does not prevent me from considering Defendants' pecuniary risk to determine if federal jurisdiction requirements have been satisfied.[32]

## III. Conclusion

In this case it is appropriate to determine the amount in controversy by looking at the pecuniary effect an adverse judgment would have on either party. Because Defendants' established by a preponderance of the evidence that the amount in controversy exceeds $75,000, Plaintiffs' Motion to Remand (Doc. No. 7) is DENIED.

IT IS SO ORDERED this 17th day of March, 2008.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[31]*Ark. State Highway Comm'n v. Mullens*, 255 Ark. 796, 502 S.W.2d 626, 627 (Ark. 1973).

[32]See *Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809 (8th Cir.1969); 28 U.S.C. § 1332(a).